### Ross v. Commonwealth.

(Decided March 20, 1925.)

## Appeal from Fayette Circuit Court.

1. Criminal Law—Refusal of Second Continuance for Absence of Witness Held Not Error.—In prosecution for rape, where one continuance because of absence of accused's witness was granted, refusal to grant second continuance, in view of instruction that jury should give same consideration to statement as to testimony of absent witness in affidavit as if he were present, was not error.

2. Rape—Evidence Held Sufficient to Support Conviction of Rape.— Evidence held sufficient to support conviction for rape.

A. A. BABLITZ for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Ray Ross, a colored man about twenty-five years old, has appealed from a judgment sentencing him to death by hanging, for raping Willie May Young, a colored girl about nine and one-half years old. She testified that this occurred on July 3, 1924. On the evening of that day, she and a number of colored children were playing on the West Second street playgrounds in Lexington, Ky. While they were playing there Ross came up. He had a bicycle with him, and a number of the children gathered around him and were talking to him about his bicycle, and about selling bicycles for him. The games were supposed to begin about seven o'clock and close at nine o'clock. Shortly before the play ceased, Willie May Young, at the direction of Ross, as she says, left the playgrounds and went to Third and Ann streets, where she waited for him. When he arrived he put her on his bicycle and carried her to a house in process of construction on Twelfth street, where he said he was going to show her some bicycles. This building was almost completed, and was one upon which Ross had been doing some painting. He unlocked the door and persuaded her to enter this house with him, upon the pretense of showing her the bicycles. After she had entered the house he showed her through it, and finally induced

her to enter a small room which he entered after her, locking the door behind him. He showed her a pistol and told her that he would blow her brains out if she holloed. She detailed the circumstances of the crime, after which she said he gave her something with which at his direction she wiped herself. He then put her on his bicycle again and took her to a point near her home, exacting from her on the way a promise not to tell her mother. She came home crying and trembling, and immediately told her mother what defendant had done to her. Her mother and father examined her, and found her bleeding and trembling as if she had a chill. They summoned Dr. W. B. Stevens, who also examined her. In his testimony he described her condition, saying that her private parts were torn, and appeared to have been penetrated about one inch.

Ross was arrested that night, and the next day Denny McCarty, a police officer of Lexington, went with the father of the girl to the house on Twelfth street and in looking through it they found a handkerchief with a heavy blue border. This handkerchief was turned over to Prof. E. J. Gott at the Experiment Station of Kentucky University. It was examined by the professor and he testified that the reddish stains upon it were blood stains, that he also found on it spermatozoa. When shown this handkerchief during the trial, Ross admitted it was his. He offered no explanation of its condition, or how it happened to be where it was found.

Other children at the playground testified to having seen Ross there, and one of the children, Margaret Brown, testified to having seen Willie May Young get on Ross' bicycle at Third and Ann streets and ride away with him. Ross admits being at the playground and says he stayed there until about 8:40; that he walked to Third and Ann streets, led his wheel, and that when he got there, Willie May Young asked him to let her ride around to her home, and that he let her ride with him to Mars avenue and Third street. He denies having ravished her, and, of course, denies taking her to the house on Twelfth street.

After his conviction, he filed a motion for a new trial and alleged seven grounds therefor. In view of the severity of the punishment imposed, we have examined the record with scrupulous care, and we find that all seven of the grounds relied upon are entirely without merit.

When this case was called for trial on July 14, Ross was granted a continuance because of the absence of one Hunter Lewis and other witnesses whose names he said he was unable then to give, and by whom he could prove that he remained at the playground until twenty minutes of nine o'clock.

When the case was called for trial again, on October 16, Ross again asked for a continuance on account of the absence of Hunter Lewis. The court refused to continue the case, and compelled him to go into trial. When he read as the evidence of Hunter Lewis, the statements contained in this affidavit, we are pleased to note that there is nothing in the record to show that the Commonwealth's attorney made any comment upon the absence of that witness or the reading of the affidavit as his evidence, and to note further that when counsel for Ross offered to read this affidavit, the court said:

"Gentlemen, Mr. Bablitz is going to read to you now from an affidavit, the testimony of a witness who is not here, and you will give it the same consideration that you would give if the witness were on the stand and testifying himself."

The punishment the jury imposed on the appellant is an awful punishment, but he is charged with an awful crime, of which the jury found him guilty. The evidence abundantly supports the verdict. The record shows that the court studiously endeavored to give him a fair trial, and he has had a fair trial. The judgment must be affirmed.

The whole court sitting.